FLORIDA CIGAR AND TOBACCO COMPANY, A CORPORATION, *Appellant*, v. BAKER & HOLMES COMPANY, A CORPORATION, *Appellee*.

1. Representations that are mere guess work are not proper bases for fraud.

2. An equity to rescind a purchase of stock in a corporation upon the ground of fraud may be lost by accepting benefits after discovery of the fraud.

This case was decided by Division A.

Appealed from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*Baker & Baker,* and *Toomer & Reynolds,* for Appellant;

*George M. Powell,* for Appellee.

COCKRELL, J.—The Baker & Holmes Company obtained a decree rescinding a contract, whereby it purchased stock in the Florida Cigar and Tobacco Company, and awarding a return of the consideration paid therefor or its equivalent in money at the agreed value of $5,340.00, with interest from January 29th, 1907, when the return was demanded.

The theory of the bill is that there was fraud in the financial statement of the condition of the Tobacco Company, and also certain representations made by that company's agent, upon the truth of which the Baker & Holmes Company relied in making the purchase of stock. We may lay aside the representations in as much as they were considered "guess work."

Any equity that might ordinarily arise from a knowingly false statement of a corporation's financial standing as an inducement to a purchase of stock, is not only weakened by the lack of any reason why in this case an independent investigation of the corporation's books might not have been first made by the intending purchaser, but also by the peculiar nature of the business in which the corporation was engaged. It was not organized primarily to yield dividends directly to its stockholders, but was more in the nature of a combination whereby various wholesale dealers in Jacksonville in the cigar and tobacco business organized a stock company to purchase supplies in large quantities, from which its members, relieving themselves from carrying such supplies, could obtain immediately and from time to time, as orders came in, the stock from the common source; that there was an advantage in the way of discount in purchasing in larger quantities of which discount the complainant received the benefits. It further appears that whereas before joining the corporation, the complainant itself carried a thirty thousand dollar stock of these commodities, from which load the corporation gave relief, thus releasing say twenty-five thousand dollars to be used in other lines of activity.

It will thus be seen how attenuated the equity became, and we find it completely blotted out by a later estoppel. The shares of stock were purchased in the spring of 1906;

in October following, the purchaser heard rumors that the corporation contemplated liquidating, and on the 16th of that month wrote that it had made the purchase on the strength of this statement (that is the financial statement referred to above), and being desirous of co-operating with the tobacco industry in this city, but having ascertained that the statement was not correct, requested a return of the amount paid for the stock with interest. Yet after the knowledge was admittedly brought home to the purchaser that the statement upon which it relied was incorrect, it continued participating in the rights belonging only to stockholders—that of securing its supplies from the common source at a discount—to the value of about four thousand dollars, and not until January 29th, 1907, as found in the decree, and after the corporation had gone into liquidation did it finally repudiate its contract.

We are of the opinion that whatever of equity may have existed in October, 1906, when the supposed fraud was actually discovered, it had ceased to exist when the final demand was made.

The decree is reversed with directions to dismiss the bill.

WHITFIELD, C. J., and SHACKLEFORD, J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.